## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIC MAGLIONE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>YALE NEW HAVEN HEALTH SYSTEM,<br><br>Defendant. | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br><br><br>MAY 23, 2025 |

ERIC MAGLIONE ("Plaintiff"), individually and on behalf all others similarly situated, brings this action against YALE NEW HAVEN HEALTH SYSTEM ("Yale Health" or "Defendant") and alleges as follows upon personal knowledge as to Plaintiff's own actions, upon investigation of Plaintiff's counsel facts of public record, and upon information and belief as to all other allegations.

## **INTRODUCTION**

1.      Plaintiff brings this action against Defendant for its failure to properly secure and safeguard Plaintiff's and Class Members' personally identifiable information ("PII") and other private information (together with PII, "Private Information") in a data breach ("Data Breach") of Defendant's network environment that occurred on or about March 8, 2025.

2.      Defendant learned of the Data Breach on March 8, 2025, but did not disclose it publicly until April 14, 2025.

3.      Defendant confirmed that Plaintiff's Private Information, including potential name, date of birth, address, telephone number, email address, race or ethnicity, Social Security number,

and/or medical record number, was stolen on March 8, 2025 in connection with the Data Breach, but Defendant did not notify Plaintiff until April 14, 2025.

4.     Plaintiff's claims herein arise from Defendant's failure to adequately secure and safeguard the Private Information entrusted to Defendant for authorized use only and from Defendant's concomitant obligation to properly store and transfer said information.

5.     Plaintiff and Class Members seek damages and injunctive and declaratory relief from Defendant for injuries that have been and will be sustained as a direct and proximate result of Defendant's failure to maintain Plaintiff's and Class Members' Private Information[1] under industry standards and for Defendant's failure to provide notice of the Data Breach to Plaintiff and Class Members until well after its initial occurrence.

6.     Defendant failed to take precautions reasonably calculated to keep Plaintiff's and Class Members' Private Information secure.

7.     Defendant owes Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep Private Information collected safe and secure from unauthorized access.

8.     Defendant solicited, collected, used, and derived benefits from Private Information, but failed to implement or maintain adequate security practices to protect Private Information.

9.     Defendant is liable for the Data Breach and for the foreseeably consequent unlawful access to use of Plaintiff's and Class Members' Private Information, including out-of-pocket

---

[1] Private Information includes all information that on its face expressly identifies an individual, consistent with the definition of PII found in 2 C.F.R. § 200.79; it is also generally defined to include certain identifiers that do not on their face name an individual, but are particularly sensitive and/or valuable if it was in the possession of a bad actor (for example, Social Security numbers, driver's license numbers, passport numbers, and banking information).

expenses, as well as expenses associated with reasonable mitigation measures that Plaintiff and Class Members may employ, as well as other damages.

10.     In the ordinary course of Defendant's business, it acquires, possesses, analyzes, and utilizes Plaintiff's and Class Members' Private Information.

11.     Plaintiff's and Class Members' Private Information, entrusted to Defendant on the mutual understanding that Defendant would protect same against disclosure, was targeted, compromised, and unlawfully accessed in the Data Breach.

12.     Defendant had a duty to implement reasonable data security practices necessary to protect sensitive, confidential and personal information entrusted to it because it is reasonably foreseeable that exposure of Private Information to unknown and criminal third parties, particularly hackers, would injure Plaintiff and Class Members, including via financial identity theft and other long-term financial and/or impersonation problems.

13.     Attempting to mitigate the resulting injuries and risks resulting from the Data Breach requires taking preventive and/or protective measures that require significant resources, including money and time, to monitor credit, financial accounts, health records, and email accounts.

14.     Defendant's notices lack specificity, failing to provide sufficient meaningful information to Plaintiff and the Class Members of the facts and circumstances relating to the Data Breach. Without these specifics, Plaintiff and the Class Members were and remain severely hampered in their ability to take measured steps to mitigate the resulting harm from the Data Breach.

15.    Plaintiff and Class Members now face a heightened and imminent risk of fraud, identity theft, health insurance benefit misappropriation, health privacy intrusion, and private information dissemination on the dark web. This risk will persist for their lifetimes.

16.    Plaintiff and Class Members suffered tangible injuries, including the diminished value of their Private Information, lost time and opportunity costs from mitigating the Data Breach consequences, loss of the benefit of their bargain with Defendant to maintain their Private Information in a reasonably protected manner, and the actual misuse of their compromised data.

17.    As a result, Plaintiff and Class Members must spend significant additional time, money, and energy to protect themselves from these potential crimes to the extent possible. All of this will need to be done to attempt to thwart the clear intent of hackers when they break into databases to steal this information to monetize this data with fraudulent and criminal transactions.

18.    Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach.

19.    Plaintiff, individually and on behalf of Class Members, asserts the following claims against Defendant: (I) Negligence and Negligence *Per Se*, (II) Breach of Implied Contract, (III) Unjust Enrichment, (IV) Breach of Fiduciary Duty, and (V) Declaratory Judgment/Injunctive Relief. Plaintiff, individually and on behalf of the Class Members, seeks damages as well as injunctive and declaratory relief.

## PARTIES

20.     Plaintiff ERIC MAGLIONE ("Maglione") is and was at all times relevant to this action, a natural person residing in the State of Connecticut, Fairfield County. Maglione brings this suit in his personal capacity and on behalf of all Class Members.

21.     Defendant YALE NEW HAVEN HEALTH SYSTEM ("Yale Health") is a nonprofit healthcare system headquartered in New Haven, Connecticut, having its principal place of business at 789 Howard Avenue, New Haven, New Haven County, Connecticut.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act 28 USC 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant, and (4) there are more than 100 proposed Class Members.

23.     This Court has personal jurisdiction over Defendant because Defendant maintains a principal place of business in this District, Defendant conducts substantial business in this District, and the events giving rise to Plaintiff's claims arise out of Defendant's contacts with this District.

24.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1), (2) because Defendant is a resident and citizen of this District and a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

25.     Yale Health is a nonprofit health system that includes five hospitals, a medical foundation, several multispecialty centers and dozens of outpatient locations and ambulatory sites stretching from Westchester County, New York, through Connecticut and into Rhode Island.

26.     Plaintiff and Class Members provided their Private Information to Yale Health as a requirement to obtain medical services from Defendant.

27.     Yale Health collects Private Information from Plaintiff and Class Members such as name, date of birth, address, telephone number, email address, race or ethnicity, and Social Security number in the ordinary course of business. Upon information and belief, this Private Information is then stored on Defendant's electronic systems.

28.     Yale Health knew or reasonably should have known that it must comply with healthcare industry standards related to data security and all federal and state laws protecting this highly sensitive Private Information and provide adequate notice if this Private Information is disclosed without proper authorization.

29.     Plaintiff and Class Members provided their Private Information to Yale Health as a condition of receiving medical services from Yale Health, but in doing so, expected Yale Health to keep their Private Information confidential and securely maintained, to use this information for business and healthcare purposes only, and to make only authorized disclosures of this information.

30.     On or about April 14, 2025, Yale Health, notified the public of the Data Breach in an online "Notice of Data Security Incident" as follows:

> Yale New Haven Health ("YNHHS") is committed to providing high-quality care to all of our patients, including maintaining the privacy and security of patient information. We recently experienced a data security incident that involved some of that information. This notice provides additional information about what happened, measures we have taken in response, and offers steps patients may consider taking.
>
> **What Happened?** On March 8, 2025, we identified unusual activity affecting our Information Technology (IT) systems. We immediately took steps to contain the incident and began an investigation, which included assistance from external cybersecurity experts. We also reported the incident to law enforcement. The investigation determined that an unauthorized third-party gained access to our network and, on March 8, 2025, obtained copies of certain data.

At no point did this incident impact our ability to provide patient care.

**What Information Was Involved?** The information involved varied by patient, but may have included demographic information (such as name, date of birth, address, telephone number, email address, race or ethnicity), Social Security number, patient type, and/or medical record number.

YNHHS' electronic medical record and treatment information were not involved or accessed, and no financial account or payment information was involved in this incident.

**What YNHHS Is Doing & What Patients Can Do.** YNHHS considers the health, safety, and privacy of patients our top priority. We are continuously updating and enhancing our systems to protect the data we maintain and to help prevent events such as this from occurring in the future.

Beginning on April 14th, we are mailing letters to patients whose information was involved. While, to date, YNHHS is not aware of any patient information being used for identity theft or fraud, as a precaution, we are offering complimentary credit monitoring and identity protection services to individuals whose Social Security number was involved. Patients are also encouraged to review statements they receive from their healthcare providers and immediately report any inaccuracies to the provider.

YNHHS has established a dedicated, toll-free call center that individuals may contact with questions about this incident. The call center is available at 1-855-549-2678, Monday through Friday, 9 am to 9 pm Eastern Time, excluding major U.S. holidays.

We take our responsibility to safeguard patient information incredibly seriously, and we deeply regret any concern this incident may have caused.[2]

31.     Upon information and belief, the Private Information of Plaintiff and Class Members that were impacted by the Data Breach was accessible, unencrypted, unprotected, and susceptible to acquisition and/or exfiltration by unauthorized individuals.

32.     Yale Health was undoubtedly a target due to its status as a healthcare entity that collects, creates, and maintains Private Information.

---

[2] *Notice of Data Security Incident*, YALE HEALTH, https://www.ynhhs.org/legal-notices (last checked May 14, 2025).

33.     The Notice of Data Security Incident does not offer sufficient information to Plaintiff or the Class Members about how their Private Information was exposed, leaving them uncertain about how to safeguard themselves fully.

34.     When highly sensitive Private Information is accessed or obtained without authorization, it is crucial to respond swiftly. The Private Information of Plaintiff and the Class Members that has been disclosed, accessed, or acquired is now likely circulating on the Dark Web. Hackers can retrieve and sell this unencrypted, unredacted Private Information to criminals.

35.     Yale Health has largely put the burden on Plaintiff and Class Members to take measures to protect themselves from identity theft and fraud.

36.     Plaintiff and Class Members are currently exposed to an ongoing risk of fraud, identity theft, and misuse due to the potential release of their Private Information, including Social Security numbers, on the Dark Web. As a result of the unauthorized access, disclosure, and/or activity by cybercriminals targeting computer systems containing hundreds of thousands of Social Security numbers, Plaintiff and Class Members now face a lifelong threat of identity theft, which is significantly increased under these circumstances.

37.     Yale Health apparently plans to offer at least some of those impacted by the Data Breach credit monitoring services. Such measures, however, are insufficient to protect Plaintiff and Class Members from the lifetime risks they each now face. As another element of damages, Plaintiff and Class Members seek a sum of money sufficient to provide to Plaintiff and Class Members identity theft protection services for their respective lifetimes.

38.     Plaintiff and the Class Members still do not know precisely which data was compromised, how the disclosure occurred, the findings of any investigations, or what measures, if any, are being implemented to protect their Private Information in the future. As a result, Plaintiff

and the Class Members are left to guess about the true extent of the Data Breach and what specific steps Defendant plans to take to improve its information security systems and monitoring to prevent additional breaches.

39.    Yale Health could have prevented the Data Breach by properly securing and encrypting and/or more securely encrypting its servers and systems, generally, as well as Plaintiff's and Class Members' Private Information.

40.    Defendant's negligence in safeguarding Plaintiff's and Class Members' Private Information was exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

41.    Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.6% of U.S.-based workers are compensated on an hourly basis.[3]

42.    Plaintiff and Class Members are deprived of the choice as to how to spend their valuable free hours and therefore seek renumeration for the loss of valuable time as another element of damages.

### Healthcare Organizations Are Frequent Target for Cybercriminals

43.    Healthcare organizations have become a main target for cybercriminals because they "hold a massive amount of patient data—including medical records, financial information, Social Security numbers, names and addresses. They are also among the few businesses that stay

---

[3] Characteristics of minimum wage workers, 2022, U.S. BUREAU OF LABOR STATISTICS (Aug. 2023), https://www.bls.gov/opub/reports/minimum-wage/2022/home.htm (last checked May 14, 2025).

open 24/7, meaning they might be more likely to prioritize avoiding disruptions and, therefore, more likely to pay a hacker's ransom."[4]

44.     In the context of data breaches, healthcare is a profoundly affected industry sector. Further, cybersecurity breaches in the healthcare industry are particularly devastating, given the frequency of such breaches and the fact that healthcare providers maintain highly sensitive and detailed Private Information.[5]

45.     Despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Class Members' Private Information from being compromised.

46.     Yale Health failed to properly train its employees as to cybersecurity best practices and to maintain proper staffing and processes for responding to and preventing network intrusions.

47.     Yale Health failed to implement sufficient processes to quickly detect and respond to data breaches, security incidents, or intrusions.

48.     Yale Health failed to encrypt Plaintiff's and Class Members' Private Information adequately and to monitor user behavior and activity to identify possible threats adequately.

49.     Yale Health failed to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

50.     Yale Health failed to timely and accurately disclose that Plaintiff's and Class Members' Private Information had been improperly acquired or accessed.

---

[4] Elise Takahama, *Why health care has become a top target for cybercriminals*, THE SEATTLE TIMES (Feb. 25, 2024), https://www.seattletimes.com/seattle-news/health/why-health-care-has-become-a-top-target-for-cybercriminals/ (last checked May 14, 2025).

[5] *See id.*

51.     Yale Health knowingly disregarded standard information security principles, despite obvious risks, by allowing unmonitored and unrestricted access to unsecured Private Information.

***Defendant Failed to Comply with FTC Guidelines***

52.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.[6] To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

53.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.[7]

54.     The guidelines recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

55.     The FTC recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious

---

[6] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Aug. 2023), https://www.ftc.gov/business-guidance/resources/start-security-guide-business (last checked May 14, 2025).

[7] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N (Oct. 2016), https://bit.ly/3u9mzre (last checked May 14, 2025).

activity on the network, and verify that third-party service providers have implemented reasonable security measures.[8]

56.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

57.     These FTC enforcement actions include actions against healthcare providers and partners like Defendant. *See, e.g.*, *In the Matter of Labmd, Inc.*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

58.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

### *Yale Health Failed to Follow Industry Standards*

59.     Despite its ostensible commitments to securing sensitive data, Yale Health has not followed industry standard practices in securing Private Information.

---

[8] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Aug. 2023), https://www.ftc.gov/business-guidance/resources/start-security-guide-business (last checked May 5, 2025).

60.     Experts studying cyber security routinely identify healthcare related entities as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

61.     Several best practices have been identified that at a minimum should be implemented by healthcare entities like Defendant, including, but not limited to, educating all employees on the risks of cyber-attacks; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

62.     Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems, such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

63.     Upon information and belief, Yale Health failed to meet the minimum standards for reasonable cybersecurity readiness.

64.     Yale Health failed to comply with these accepted standards, thus opening the door to criminals and the Data Breach.

***Defendant Violated HIPAA and HITECH***

65.     HIPAA sets forth security provisions and data privacy responsibilities designed to keep medical information safe. HIPAA compliance provisions, commonly known as the

Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[9]

66.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure confidentiality, integrity, and security of Protected Health Information ("PHI") is properly maintained.[10]

67.     The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

   a.     Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

   b.     Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

   c.     Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

---

[9] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[10] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

    d.      Failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

    e.      Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

    f.      Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

    g.      Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

    h.      Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

    i.      Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

68.    Defendant acknowledges in its "Notice of Privacy Practices" that the Private Information collected by Defendant is subject to HIPAA's requirements:

> We work hard to ensure the privacy of patients and maintain confidentiality their information and medical records. Like all accredited healthcare institutions, we follow a federal law called the Health Insurance Portability and Accountability Act (HIPAA), which is designed to protect the privacy and confidentiality of patient

information. We insist that our staff observe patient confidentiality – respecting your right to privacy about your medical records and experience at our hospital.

[...]

This notice describes how medical information about you may be used and disclosed and how you can get access to this information. Please review it carefully. If you have any questions, please contact our privacy office at the phone number at the bottom of this notice.

**Our pledge to you:** We understand that medical information about you is personal. We are committed to protecting medical information about you. We create a record of the care and services you receive to provide quality care and to comply with legal requirements. This notice applies to all of the records of your care generated by any of the separate facilities and providers described below. We are required by law to:

- Keep medical information about you private;
- Give you this notice of our legal duties and privacy practices with respect to medical information about you; and
- Follow the terms of the notice this is currently in effect,

[…]

Who will follow this notice? Yale New Haven Health System (Yale Health) and Yale School of Medicine (YSM) facilities provide health care to our patients in partnership with other professionals and healthcare organizations. The information privacy practices in this notice will be followed by:

- Any healthcare professional who treats you at any of our locations
- All departments and affiliated covered entities of Yale New Haven Health System, including; Bridgeport Hospital, Greenwich Hospital, Northeast Medical Group, Westerly Hospital, Lawrence + Memorial Hospital and Yale New Haven Hospital
- Yale School of Medicine
- The clinical care providers of Yale School of Nursing as well as their affiliates
- All employees, medical staff, affiliates, trainees, students, or volunteers of the entities listed above.[11]

Defendant also represents the following in a section of its website about the "Data Security and Retention" of Plaintiff's and Class Members' Private Information:

---

[11] *Our Policies*, YALE HEALTH, https://www.ynhhs.org/policies (last checked May 14, 2025).

Yale Health follows all applicable laws governing the retention of your data. Factors that influence the length of time that we retain your data include: the information needed to provide products, services, and experiences to you; the data needed to manage your account, ensure secure payment, and contact you; and, finally, the data needed to serve any advertising based on personal interests and preferences.

Yale Health makes every reasonable effort to ensure that all of the transactions that occur on our websites are secure. We use a secure firewall and a security infrastructure that protects the integrity and privacy of personal information submitted to us via this website. We store all data with Secure Socket Layer (SSL) encryption to protect information you may submit on our Sites. SSL is the standard industry protocol. All off-line information is securely stored and is accessible only by authorized staff. That being said, Yale Health cannot ensure or warrant the security of any information you transmit to us, and you do so at your own risk. We have taken reasonable steps to ensure the integrity and confidentiality of personal data that you may provide. You should understand, however, that electronic transmissions via the internet are not necessarily secure from interception, and so we cannot absolutely guarantee the security or confidentiality of such transmissions.[12]

69.    Defendant thus agrees that it must comply with HIPAA. The Data Breach, however, which resulted from a combination of inadequacies, demonstrates that Defendant indeed failed to comply with safeguards mandated by HIPAA regulations.

70.    Yale Health is also required to follow the regulations for safeguarding electronic medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

71.    Both HIPAA and HITECH obligate Yale Health to follow reasonable security standards, respond to, contain, and mitigate security violations, and to protect against disclosure of sensitive Private Information. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); 45 C.F.R. § 164.530(f); 42 U.S.C. § 17902.

---

[12] *Online Privacy Policies*, YALE HEALTH, https://www.ynhhs.org/policies/online-privacy (last checked May 14, 2025).

*Plaintiff's Experiences and Injuries Caused by the Data Breach*

72.    Plaintiff and Class Members are current and former patients of affiliated entities of Yale Health.

73.    As a prerequisite of being able to obtain medical care from Yale Health, Defendant required Plaintiff and Class Members to provide their Private Information.

74.    Yale Health began notifying Plaintiff and Class Members about the Data Breach on or around April 14, 2025.

75.    When Yale Health finally announced the Data Breach, it deliberately understated the severity and obfuscated the nature of the Data Breach. Defendant's Data Breach notice fails to adequately explain how the breach occurred, what exact data elements of each affected individual were compromised, and the extent to which those data elements were compromised.

76.    Because of the Data Breach, Defendant inflicted injuries upon Plaintiff and Class Members, yet Defendant has done little to provide Plaintiff and the Class Members with relief for the damages they suffered.

**A.    Plaintiff Eric Maglione**

77.    Plaintiff Eric Maglione is an adult individual and a natural person of Connecticut, residing in Fairfield County, where he intends to stay.

78.    Plaintiff received medical care from an affiliated facility of the Defendant.

79.    Yale Health obtained Plaintiff's information as a prerequisite for Plaintiff to obtain medical care from Yale Health. Yale Health collects and maintains personal and sensitive information of its patients, such as Plaintiff, in order to provide medical care.

80.    Plaintiff received from Yale Health a Data Breach notice letter, dated April 14, 2025.

81.     The Data Breach notice letter informed Plaintiff that the following types of his Private Information were potentially compromised in the Data Breach: name, date of birth, address, telephone number, email address, race or ethnicity, Social Security number, and/or medical record number.

82.     Plaintiff is a reasonably cautious person and is therefore careful about sharing his sensitive Private Information.

83.     Plaintiff only allowed Defendant to maintain, store, and use his Private Information because he believed that Defendant would use basic security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information. Plaintiff's Private Information was within the possession and control of Defendant at the time of the Data Breach.

84.     In the event that Plaintiff's Private Information was accessed and obtained by a third party without his consent or authorization, Plaintiff suffered injury from a loss of privacy.

85.     Plaintiff has been further injured by the damages to and diminution in value of Private Information—a form of intangible property that Plaintiff entrusted to Defendant. This information has inherent value that Plaintiff was deprived of when his Private Information was placed on a publicly accessible database, and exfiltrated by cybercriminals.

86.     The Data Breach has also caused Plaintiff to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of criminals. Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach.

19

87.     Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

88.     Plaintiff brings this action individually and on behalf of others similarly situated under Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

89.     Specifically, Plaintiff proposes the following class definition, subject to any appropriate amendments:

> All individuals residing in the United States who were impacted by the Data Breach as announced by Defendant in April 2025 ("Class").

90.     Excluded from the Class is Defendant, its subsidiaries, officers, directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families, all judges assigned to hear any aspect of this litigation, their immediate family members; and those individuals who make a timely and effective election to be excluded from this matter using the correct protocol for opting out.

91.     The proposed class definition is based on current information and may be modified as necessary during discovery or when moving for class certification to reflect any new or changed facts.

92.     **Numerosity:** The Class likely includes hundreds of thousands of members, with exact numbers and identities determinable from Defendant's records, including those related to the Data Breach.

93.     **Commonality:** This action involves common questions of law and fact. These include whether Defendant:

a.    Failed to timely notify Plaintiff and Class Members of the Data Breach;

b.    Had a duty to protect the Class Members' Private Information;

c.    Failed to safeguard Private Information adequately;

d.    Was negligent in handling Private Information;

e.    Violated laws by failing to notify of the breach;

f.    Failed to implement reasonable security procedures;

g.    Negligently caused the Data Breach;

h.    Entered into an implied contract and breached it;

i.    Was unjustly enriched; and

j.    Should provide damages and/or injunctive relief.

94.    **Typicality:** Plaintiff's claims are typical of the Class, as they arise from the same unlawful conduct and legal theories. All Class Members had their Private Information exposed due to Defendant's actions.

95.    **Policies Generally Applicable to the Class:** This class action is appropriate because Defendant's policies apply uniformly to the Class, necessitating consistent relief.

96.    **Adequacy of Representation:** Plaintiff is an adequate representative, with no conflicting interests. Plaintiff's claims align with those of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical.

97.    **Superiority:** A class action is superior due to impracticality of individual litigation, offering economies of scale and uniform decision-making. A class action allows for efficient adjudication without unnecessary duplication of effort and expense. Class action treatment is a superior approach for fair and efficient adjudication, enabling numerous Class Members to pursue

common claims simultaneously. It prevents unnecessary duplication and allows for modest claims to be litigated efficiently, which would otherwise be economically impractical for individual Class Members.

98.    **Manageability:** The litigation is manageable due to Defendant's uniform conduct and consistent legal provisions, ensuring consistent outcomes and avoiding unnecessary duplication. The prosecution of this lawsuit as a class action presents no significant manageability issues. Adequate notice can be provided to Class Members using information from Defendant's records.

99.    Class certification, injunctive relief, and declaratory relief are appropriate due to Defendant's actions affecting the Class as a whole.

100.    Key issues suitable for certification include:

    a.    Whether Defendant timely notified Plaintiff and the Class of the data breach;

    b.    Whether Defendant owed a duty to exercise due care in handling private information;

    c.    The reasonableness of Defendant's security measures;

    d.    Whether Defendant's failure to implement adequate security was negligent;

    e.    Whether Defendant failed to take reasonable steps to safeguard private information; and

    f.    Whether following FTC recommendations could have prevented the breach.

101.    **Predominance:** Common questions of law and fact predominate over individual issues, as similar violations, practices, and injuries are involved. Defendant's conduct, liability, and damages are common to all Class Members.

102.    **Injunctive Relief:** Injunctive relief is appropriate due to Defendant's actions affecting the Class generally. Without a class-wide injunction, Defendant may continue to fail in securing Class Members' private information, refuse proper notification regarding the data breach, and act unlawfully as alleged.

103.    **Ascertainability:** Class Members are ascertainable based on objective criteria and can be identified through Defendant's records.

<u>**CAUSES OF ACTION**</u>

**FIRST CAUSE OF ACTION—NEGLIGENCE AND NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and all Class Members)**

104.    Plaintiff hereby re-alleges and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

105.    Defendant owed Plaintiff and Class Members a duty of care to secure and safeguard their Private Information using commercially reasonable methods. This duty arose when Defendant accepted and stored Plaintiff's and Class Members' Private Information on its systems.

106.    Defendant's obligations included exercising reasonable care in obtaining, retaining, securing, and protecting Private Information; implementing industry-standard security procedures; promptly detecting and responding to data breaches; and notifying affected individuals of any security incidents promptly and with specificity.

107.    Defendant was aware that Private Information is private and confidential, and thus, it had a duty not to expose Plaintiff and Class Members to unreasonable risks of harm.

108.    Defendant knew or should have known about the risks associated with collecting and storing Private Information, the vulnerabilities of its systems, and the importance of adequate security.

109.    Despite this knowledge, Defendant failed to ensure its systems were sufficient to protect Private Information.

110.    This failure constitutes a breach of its duties to Plaintiff and Class Members.

111.    Defendant had independent duties under state and federal laws to safeguard Private Information and notify affected parties of breaches.

112.    These obligations are separate from any contractual agreements.

113.    Defendant breached its general duty of care by failing to provide adequate security practices, timely disclose breaches, protect Private Information, and implement necessary security measures.

114.    Defendant's breaches included failing to provide reasonable security systems, timely disclose breaches, protect Private Information, implement breach detection processes, encrypt Private Information, and train employees properly.

115.    These failures were wrongful, reckless, and grossly negligent, given the foreseeable risks and known threats.

116.    There is a close causal connection between Defendant's failure to implement security measures and the harm suffered. Defendant's actions constitute common law negligence.

117.    Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect Private Information, contrary to industry standards and FTC guidelines. This conduct was particularly unreasonable given the nature and amount of Private Information involved.

118.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and Class Members have been caused to suffer and will continue to suffer the continued risks of exposure of their Private Information, which the Defendant still possesses, and may result

in further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession.

## SECOND CAUSE OF ACTION – BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and all Class Members)

119.    Plaintiff hereby re-alleges and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

120.    By providing Private Information to Defendant in exchange for services, Plaintiff and Class Members entered into implied contracts with Defendant.

121.    These contracts were based on the reasonable expectation that Defendant would protect the information with due care.

122.    Defendant actively solicited and invited Plaintiff and Class Members to share their Private Information as part of its standard business practices.

123.    In response, Plaintiff and Class Members accepted these offers and provided their Private Information, trusting that Defendant would handle it securely.

124.    In entering these implied contracts, Plaintiff and Class Members reasonably assumed that Defendant's data security practices complied with relevant laws, regulations, and industry standards.

125.    They also expected that Defendant would allocate sufficient resources to maintain adequate data security.

126.    By providing services and payments to Defendant, Plaintiff and the Class Members relied on the understanding that Defendant would use part of its earnings to ensure robust data security measures. Defendant failed to meet these expectations.

127.    The implied contract between Plaintiff, Class Members, and Defendant was predicated on the understanding that Defendant would keep their Private Information reasonably secure.

128.    Without this assurance, Plaintiff and Class Members would not have entrusted their sensitive information to Defendant.

129.    Furthermore, Plaintiff and the Class Members relied on Defendant's implied promise to monitor its systems and networks to ensure the adoption of reasonable data security measures.

130.    Plaintiff and Class Members fulfilled their obligations under the contracts implied by providing their Private Information in good faith.

131.    Defendant breached these implied contracts by failing to safeguard and protect the Private Information of Plaintiff and the Class Members.

132.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages resulting from the data breach.

133.    Plaintiff and Class Members seek injunctive relief, requiring Defendant to enhance its data security systems and monitoring procedures, undergo annual audits, and provide immediate and adequate credit monitoring to Plaintiff and Class Members.

### THIRD CAUSE OF ACTION—UNJUST ENRICHMENT
#### (On Behalf of Plaintiff and All Class Members)

134.    Plaintiff hereby re-alleges and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

135.    Plaintiff brings this claim in the alternative to breach of implied contract.

136.    Plaintiff and Class Members conferred significant benefits upon Defendant by providing their Private Information.

137.    In exchange, Plaintiff and the Class Members expected to have their Private Information protected with adequate data security measures.

138.    Defendant was aware of these benefits conferred, accepted them, and profited from the transactions by using Plaintiff's and the Class Members' Private Information for business purposes.

139.    Upon information and belief, Defendant funds its data security measures from its general revenue, which includes payments made on behalf of Plaintiff and Class Members.

140.    A portion of these payments should have been allocated to provide a reasonable level of data security.

141.    Defendant, however, failed to secure the private information adequately, despite deriving revenue from it and relying on it for essential business functions.

142.    Had Plaintiff and Class Members known about Defendant's inadequate security practices, they would not have provided their Private Information.

143.    Defendant enriched itself by diverting funds meant for data security to increase its profits, using cheaper and ineffective measures instead.

144.    This decision directly and proximately harmed Plaintiff and Class Members.

145.    As a result of Defendant's actions, Plaintiff and Class Members suffered various injuries, including invasion of privacy, theft of private information, lost value of private information, time and opportunity costs to mitigate the breach, loss of benefit of the bargain, and increased risk to their private information.

146.    Plaintiff and Class Members have no adequate remedy at law.

147.    Under principles of equity and good conscience, Defendant should not retain the money wrongly obtained by Defendant on behalf of Plaintiff and Class Members, nor profit from the use of Plaintiff's and Class Members' Private Information.

148.    Defendant should be compelled to disgorge these proceeds into a common fund or constructive trust for the benefit of Plaintiff and Class Members.

### FOURTH CAUSE OF ACTION—BREACH OF FIDUCIARY DUTY
### (On Behalf of Plaintiff and All Class Members)

149.    Plaintiff hereby re-alleges and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

150.    A relationship existed among Plaintiff and the Class Members and Defendant, arising from Defendant's acceptance of Plaintiff's and Class Members' Private Information, as well as Defendant's express representations regarding its commitment to safeguard such information.

151.    By accepting Plaintiff's and Class Members' Private Information, Yale Health assumed the role of guardian of that data. Through this undertaking, Yale Health became a fiduciary, obligated to act primarily for the benefit of Plaintiff and Class Members. This fiduciary duty included, but was not limited to, the responsibility to safeguard Private Information and to provide timely detection and notification to Plaintiff and Class Members in the event of a data breach.

152.    Public policy considerations further support the imposition of a fiduciary duty under these circumstances, given Defendant's acceptance of Plaintiff's and Class Members' Private Information and its representations regarding the protection of such information.

153. Defendant breached its fiduciary duty to Plaintiff and Class Members by failing to exercise the utmost good faith, fairness, honesty, and the highest degree of loyalty. Specifically, Defendant failed to adequately protect the Private Information of Plaintiff and Class Members.

154. Defendant's breach of fiduciary duty was the legal cause of damages suffered by Plaintiff and Class Members.

155. But for Defendant's breach of its fiduciary duty, Plaintiff and Class Members would not have sustained these damages.

156. Defendant's breach of fiduciary duty was a substantial factor in causing the damages incurred by Plaintiff and Class Members.

157. As a direct and proximate result of Yale Health's breaches of its fiduciary duties, Plaintiff and Class Members have suffered, will suffer, or are at increased risk to suffer concrete injuries, including but not limited to:

    a. Actual identity theft;

    b. Loss of the opportunity to control the use and disclosure of their Private Information;

    c. Unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing of their Private Information;

    d. Out-of-pocket expenses related to the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information;

    e. Lost opportunity costs and loss of productivity resulting from efforts to address and mitigate the actual and future consequences of the data breach, including time spent researching ways to prevent, detect, contest, and recover from identity theft;

f.   Ongoing risk to their Private Information, which remains in Yale Health's possession and is susceptible to further unauthorized disclosures as long as Yale Health fails to implement adequate protective measures and retain vendors who ensure the security of Private Information;

g.   Future costs in terms of time, effort, and money necessary to prevent, detect, and remediate the impact of the compromised Private Information for the foreseeable future; and

h.   Nominal damages.

158.   As a direct and proximate result of Yale Health's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer additional forms of injury, harm, and other economic and non-economic losses.

### FIFTH CAUSE OF ACTION—DECLARATORY JUDGMENT/INJUNCTIVE RELIEF
### (On Behalf of Plaintiff and All Class Members)

159.   Plaintiff hereby re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

160.   Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., this Court is vested with the authority to declare the rights and legal relations of the parties and to grant all necessary and appropriate relief. Additionally, the Court possesses broad discretion to enjoin conduct that is tortious or in violation of federal and state statutes as described in this Complaint.

161.   An actual controversy exists following the Data Breach concerning the adequacy of Defendant's current data security measures to protect Plaintiff's and Class Members' Private Information from further compromise. Plaintiff alleges that Defendant's data security protocols remain insufficient.

162. The cybersecurity incident involving Defendant underscores the necessity for injunctive relief on behalf of Plaintiff and Class Members. Defendant has failed to implement adequate measures to safeguard Private Information, thereby leaving Plaintiff and Class Members without effective means to protect themselves.

163. As a direct result of the compromise of their Private Information, Plaintiff and Class Members continue to sustain injuries and remain at imminent risk of further unauthorized disclosures in the future.

164. In accordance with the Declaratory Judgment Act, Plaintiff respectfully requests that this Court issue a judgment declaring, among other things, that: Defendant owes a legal duty to secure the Private Information of Plaintiff and Class Members and to provide timely notification of any data breach under common law, Section 5 of the Federal Trade Commission Act, HIPAA, and various state statutes and that Defendant is in ongoing breach of this duty by failing to implement reasonable security measures to protect such information.

165. Plaintiff further requests that the Court order injunctive relief:

    a.    Requiring Defendant to provide lifetime credit monitoring and identity theft insurance for Plaintiff and Class Members;

    b.    Requiring Defendant, in fulfillment of its contractual and legal obligations, to implement and maintain reasonable security and monitoring measures, including but not limited to:

        i.    Prohibiting Defendant from engaging in the wrongful and unlawful acts alleged herein;

ii.     Requiring Defendant to protect all business-collected data, including through encryption, in compliance with applicable regulations, industry standards, and federal, state, and local laws;

iii.     Mandating the deletion and purging of Plaintiff's and Class Members' Private Information unless Defendant can demonstrate to the Court a reasonable justification for its retention and use, balanced against the privacy interests of Plaintiff and Class Members;

iv.     Requiring Defendant to implement and maintain a comprehensive Information Security Program to protect the confidentiality and integrity of Plaintiff's and Class Members' Private Information;

v.     Mandating that Defendant engage independent third-party security auditors and internal personnel to conduct automated security monitoring, simulated attacks, penetration tests, and periodic audits of Defendant's systems;

vi.     Prohibiting Defendant from storing Plaintiff's and Class Members' Private Information on a cloud-based database until appropriate safeguards and processes are in place;

vii.     Requiring Defendant to segment data through firewalls and access controls to prevent unauthorized access to other portions of Defendant's systems in the event of a compromise;

viii.     Requiring regular database scanning and security checks;

ix.     Mandating monitoring of all network traffic ingress and egress;

x.     Requiring the establishment of an information security training program, including at least annual training for all employees and additional training as appropriate based on employees' responsibilities concerning Private Information;

xi.     Requiring implementation of a testing system to assess employees' knowledge of security education programs and periodic, random testing of compliance with Defendant's information security policies and procedures;

xii.     Requiring Defendant to implement, maintain, and revise as necessary a threat management program to monitor networks for internal and external threats and to ensure monitoring tools are properly configured, tested, and updated; and

xiii.     Requiring Defendant to provide meaningful education to all Class Members regarding the risks associated with the loss of their confidential personal information and the steps they should take to protect themselves.

166.    Absent the issuance of an injunction, Plaintiff and Class Members will suffer irreparable harm and lack an adequate legal remedy should another data breach occur involving Defendant. The threat of another breach is real, immediate, and substantial. In the event of a subsequent breach, Plaintiff and Class Members would be unable to obtain adequate relief at law due to the difficulty in quantifying many of the resulting injuries and the potential need to initiate multiple lawsuits to address the same conduct.

167.    The hardship faced by Plaintiff and Class Members if injunctive relief is denied far outweighs any hardship to Defendant if such relief is granted. Plaintiff and Class Members face a significant risk of identity theft and related damages, whereas the cost to Defendant of complying with reasonable data security measures is relatively minimal and consistent with Defendant's existing legal obligations.

168.    Granting the requested injunction serves the public interest. On the contrary, denying such relief would expose the public to the risk of further data breaches and the attendant harms to Plaintiff and Class Members whose confidential information could be further compromised.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant judgment as follows:

A.    Certifying this action as a class action and appoint Plaintiff and Plaintiff's counsel to represent the Class, ensuring that all affected parties are adequately represented and protected;

B.    Declaring the misconduct alleged herein to be unlawful as arising under the law set forth herein;

C.    Awarding Plaintiff and the Class Members damages in an amount to be determined at trial, including pre-judgment interest, statutory damages, and penalties;

D.    Enjoining Defendant from engaging in the wrongful conduct alleged herein, specifically the misuse and/or disclosure of Plaintiff's and Class Members' Private Information and compelling Defendant to provide prompt, complete, and accurate disclosures to Plaintiff and Class Members regarding the data breach;

E.    Compelling Defendant to implement and maintain robust methods and policies for client data collection, storage, and safety and compelling Defendant to disclose with specificity the type of private information compromised during the data breach, ensuring transparency and accountability;

F.    Awarding Plaintiff and the Class Members injunctive relief, including, but not limited to, the following measures necessary to protect the interests of Plaintiff and Class Members:

     i.    Prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

     ii.    Mandating Defendant to protect all collected data through encryption, in accordance with applicable regulations, industry standards, and federal, state, or local laws;

     iii.    Requiring Defendant to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless justified retention is demonstrated, balancing privacy interests against business needs;

     iv.    Compelling Defendant to establish and maintain a comprehensive Information Security Program to safeguard the confidentiality and integrity of private information;

     v.    Prohibiting Defendant from storing private information on cloud-based databases;

     vi.    Mandating Defendant to engage independent third-party security auditors and internal personnel to conduct periodic testing, including simulated attacks and penetration tests, and to promptly address any identified issues;

vii. Requiring Defendant to engage independent third-party security auditors and internal personnel for automated security monitoring;

viii. Mandating that Defendant audit, test, and train its security personnel on new or modified procedures;

ix. Requiring Defendant to segment data using firewalls and access controls to prevent unauthorized access across its network;

x. Mandating regular database scanning and security checks by Defendant;

xi. Establishing an information security training program with at least annual training for all clients, tailored to their responsibilities in handling personal identifying information;

xii. Conducting routine internal training and education, including annual updates for security personnel on breach identification and response.

xiii. Implementing tests to assess clients' knowledge of education programs and compliance with policies;

xiv. Developing a threat management program to monitor networks for internal and external threats, ensuring monitoring tools are configured, tested, and updated; and

xv. Educating Class Members about the risks associated with the loss of their confidential information and steps to protect themselves. xvi. Implementing logging and monitoring programs to track server traffic;

G. Ordering Defendant to provide at least five years of credit monitoring services for Plaintiff and the Class to mitigate potential financial harm;

H.    Awarding attorneys' fees and costs, including expert witness fees, to compensate for the legal efforts expended in this matter; and

I.    Awarding Plaintiff and the Class such other and further relief as this Court may deem just and proper.


Dated: May 23, 2025                           Respectfully submitted,

                                    By:    */s/ Richard E. Hayber*
                                           Richard E. Hayber
                                           **HAYBER, MCKENNA & DINSMORE, LLC**
                                           750 Main Street
                                           Suite 904
                                           Hartford, CT 06103
                                           Tel.: (860) 522-8888
                                           rhayber@hayberlawfirm.com

                                           Blaine Finley (*pro hac vice* forthcoming)
                                           **FINLEY PLLC**
                                           1455 Pennsylvania Avenue, NW
                                           Suite 400
                                           Washington, D.C. 20004
                                           Tel.: (281) 723-7904
                                           bfinley@finley-pllc.com

                                           Michele S. Carino (*pro hac vice* forthcoming)
                                           **GREENWICH LEGAL ASSOCIATES, LLC**
                                           881 Lake Avenue
                                           Greenwich, CT 06831
                                           Tel.: (203) 622.6001
                                           mcarino@grwlegal.com